**ELSINORE PERFUME CO., Inc., v. CAMPBELL, Federal Prohibition Administrator, et al.**

District Court, E. D. New York. May 25, 1928.

No. 3435.

1. **Intoxicating liquors** ☞108(10)—**Findings of prohibition authorities, revoking permit, must be sustained, if there is competent evidence.**

In case there is any competent legal evidence, findings of prohibition authorities, revoking a permit to withdraw specially denatured alcohol, must be sustained.

2. **Intoxicating liquors** ☞108(5)—**Evidence held insufficient to justify revocation of permit to withdraw specially denatured alcohol (National Prohibition Act, tit. 3, regulation 3 [27 USCA § 71 et seq.]).**

Evidence held insufficient to justify revocation of permit to withdraw specially denatured alcohol for violation of terms and conditions of the permit and regulation 3 under title 3 of the National Prohibition Act (27 USCA § 71 et seq.).

In Equity. Action by the Elsinore Perfume Company, Inc., against Maurice Campbell, Federal Prohibition Administrator for the Second District of New York, and others. Decree for plaintiff.

Lewis Landes, of New York City, for plaintiff.

William A. De Groot, U. S. Atty., of Brooklyn, N. Y. (Anthony P. Savarese, Asst. U. S. Atty., of New York City, of counsel), for defendants.

MOSCOWITZ, District Judge. This is an action in equity under provisions of title 2, § 9, of the National Prohibition Act (27 USCA § 21), to review the acts of the defendant in revoking the plaintiff's permit to withdraw specially denatured alcohol under

26 F.(2d)—47½

formula 39–B. The permit was revoked upon the ground:

"That on or about December 5, 1927, at 25–27 Bergen street, Brooklyn, permittee unlawfully, willfully, and knowingly removed or caused to be removed from its place of business 100 gallons of specially denatured alcohol in 5-gallon cans, in violation of the terms and conditions of the permit and regulation 3, under title 3 of the National Prohibition Act [27 USCA § 71 et seq.]. That between December 5, 1927, and December 19, 1927, permittee unlawfully, willfully, and knowingly kept and maintained false and fictitious records of the use of 100 gallons of specially denatured alcohol for formula 39–B in the manufacture of alcoholic preparations called for under your permit, in violation of regulation 3, under title 3 of the National Prohibition Act."

On or about 5:30 p. m. of December 5, 1927, Agents Marsini and Manion saw two automobiles arrive at the premises in question. They testified that they saw many empty cans taken from the automobiles and placed in the elevator shaftway. Upon cross-examination Agent Marsini was asked:

"Q. Whether you can tell us now whether the contents of those cans that you saw unloaded were empty or full? A. No; I couldn't say.

"Q. Do you know whether, on December 5, 1927, at about 5:45 p. m., at the time these cans were being taken from the automobile to the elevator in the building in which the respondent is located, if there were any other cans on that elevator at that time? A. I couldn't say that.

"Q. You don't know whether there were any cans in the hatchway before? A. No.

"Q. And did you see the elevator go up? A. No, sir."

At about 7:30 p. m. a Cadillac car drove up to the premises. There were at once unloaded from the elevator shaftway 20 five-gallon cans, which later, upon examination, proved to be filled with specially denatured alcohol, formula 39–B. The agent further testified that:

"After I placed these four men under arrest, I ran upstairs to the premises known as the Elsinore Perfume Company and found the place in darkness and the door locked.

"Q. Do you know of your own knowledge whether the contents of the cans at the time you placed the men under arrest came from the premises of the respondent? A. Yes, sir.

"Q. How do you know? A. For the reason that we noticed a light lit on the second

floor, known as the Elsinore Perfume Company. At about 5:15 p. m. this light went out. At about 5:30, or a little after that, this light went on again. That light was lit until the arrest was made, and as soon as the arrest was made the door slammed shut upstairs and the light was out. I turned the prisoners over to my partner and ran up to get the fellows upstairs.

"Q. What did you find upstairs? A. Darkness and the place closed."

On the following day the agents visited the premises and inspected all the alcohol and the finished product. In attempting to determine if any alcohol was missing, the agents based their calculations upon the use of a broom handle and a rule. The agents claimed that out of nine barrels of alcohol there was a shortage of 50 gallons. Their conclusion is based upon their approximate calculations, as measured by a broom handle and a rule.

The testimony of the agents is based upon mere suspicion. The cans placed in the elevator shaft may have been full. The cans which were seized contained 100 gallons of alcohol. The claim of a shortage of 50 gallons is based upon the broom handle and rule measure. The entire record is based upon surmise, speculation, and suspicion.

The revocation must be based upon something more substantial than suspicion and speculation. The act provides that the permit shall be revoked only "where it is found that such person has been guilty of willfully violating any such laws, as charged, or has not in good faith conformed to the provisions of this act."

[1] The law is that, if there is any competent legal evidence, the findings of the prohibition authorities should be sustained.

[2] There is no competent legal evidence to justify the revocation of the permit. The action revoking the permit will be reversed, and the permit reinstated.

Decree for the plaintiff. Settle decree on notice.